UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00254-GCM

| RAHEEM K. FULLER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| OFFICER J. RYAN CLARK, et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendants J. Ryan Clark and Peter N. Hildenbrand's Motion for Summary Judgment [Doc. 35].

**I.     BACKGROUND**

The incarcerated Plaintiff, Raheem K. Fuller, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. The unverified Complaint passed initial review on a claim that the Defendants used excessive force against him during his arrest.[2] [Docs. 1, 12]. The Plaintiff seeks compensatory and nominal damages, and injunctive relief. [Doc. 1 at 8].

Defendants Clark and Hildenbrand filed the instant Motion for Summary Judgment and supporting materials. [Doc. 35: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 37: Roseboro Order]. The Plaintiff filed materials opposing

---

[1] "Officer R. Clark" and Sgt. Hildenbrand" in the Complaint. [Doc. 1 at 1]. The Defendants' summary judgment materials reflect their correct names. The Clerk will be instructed to update the Court's record accordingly.

[2] This case was assigned to Chief Judge Reidinger at that time.

summary judgment including a notarized Response and Declaration.[3] [Doc. 38: MSJ Response; Doc. 38-1: MSJ Response Exhibits]. He had also previously filed a notarized Declaration and attachment. [Doc. 34: Plaintiff's Decl.]. The Defendants filed a Notice that they do not intend to reply. [Doc. 39: Notice]. Having been fully briefed, this matter is ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose

---

[3] The Plaintiff asks the Court not to consider "extrinsic evidence" filed by the Defendants because motions to dismiss only consider the adequacy of the Complaint. [Doc. 38: MSJ Response at 1]. However, as the Court explained in the Roseboro Order, the Defendants filed a Motion for Summary Judgment, and not a Motion to Dismiss. Further, the Plaintiff's Response and supporting materials make broad statements including: expressions of general disagreement with the Defendants' positions; assertions that the Defendants' summary judgment materials and interrogatory responses contain lies; and the contention that "crucial questions of fact" remain. [Doc. 38: MSJ Response; Doc. 38-1: MSJ Response Exhibits]. These conclusory and unsupported contentions do not warrant separate discussion. See generally Cottom v. Town of Seven Devils, 30 F. App'x 230, 235 (4th Cir. 2002) (conclusory affidavits are insufficient to survive a motion for summary judgment) (citing Evans v. Tech Appl. & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996)).

2

a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

3

Case 3:21-cv-00254-GCM    Document 40    Filed 08/29/22    Page 3 of 15

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

On February 5, 2020, Charlotte-Mecklenburg Police Department ("CMPD") officers responded to a homicide in which the victim had been shot. [Doc. 35-5: Hildenbrand Aff. at ¶ 3]. The investigation resulted in identifying the Plaintiff as a suspect and, on February 7, 2020, several APBs and BOLOs were put out for him, stating that he should be considered armed and dangerous and that he was probably armed with the weapon used in the homicide. [Id. at ¶ 4; Doc. 35-3: Hildenbrand Stmt. at 2; Doc. 35-3: Cook Stmt. at 9; Doc. 35-3: Clark Stmt. at 11-12]. At approximately 4:42 PM that day, a CMPD detective radioed that he had spotted the Plaintiff. [Doc. 35-3: Clark Stmt. at 11; Doc. 35-5: Hildenbrand Aff. at ¶ 5]. CMPD officers including Sergeant Hildenbrand in his vehicle, and Officers Clark and Cook in a separate vehicle,[4] responded. [Id.]. Sergeant Hildenbrand and Officers Clark and Cook were all uniformed, they were in marked vehicles, and Officer Clark had his vehicle's blue lights and siren were activated. [See Doc. 35-2: Body Worn Camera ("BWC") Ex 4, 5, 6; Doc. 35-5: Hildenbrand Aff. at ¶ 2].

The Plaintiff began running when the marked unit arrived in the area. [Doc. 35-3: Hildenbrand Stmt. at 2; Doc. 35-3: Cook Stmt. at 9]. The Plaintiff ran because he did not know he had any warrants, he was in fear for his life, and he has a "panic disorder." [Doc. 38-1: Plaintiff's Decl. at 1]. Officer Clark stopped his vehicle near where the Plaintiff was fleeing. [Doc. 35-3: Clark Stmt. at 11; Doc. 35-5: Hildenbrand Aff. at ¶ 6]. Officers Cook and Clark drew their pistols, exited the vehicle, and began pursuing the Plaintiff on foot down a grassy embankment and into a parking lot.[5] [Doc. 35-3: Cook Stmt. at 9; Doc. 35-3: Clark Stmt. at 11; see Doc. 35-2:

---

[4] Officer Cook is not a Defendant in this case.

[5] The Plaintiff states that he has "facts on the paperwork" to prove that it was Sergeant Hildenbrand, and not Officer Cook, who apprehended him with Officer Clark. [Doc. 38-1: Plaintiff's Decl. at 1]. This appears to refer to a Narrative

4

BWC Ex. 4, 5, 6]. Officer Clark slipped and fell, knocking his BWC onto the ground, and breaking the scaphoid bone in his left wrist.[6] [Doc. 35-3: Clark Stmt. at 11]. Officer Cook continued to pursue the Plaintiff, who stopped running and faced the officer near a business entrance. [Doc. 35-3: Cook Stmt. at 9; see Doc. 35-2: BWC Ex 4]. Officer Cook grabbed the Plaintiff with one hand and placed the Plaintiff on the ground;[7] Officer Clark arrived moments later. [Doc. 35-3: Cook Stmt. at 9; Doc. 35-3: Clark Stmt. at 11]. The Plaintiff began yelling that he did not do anything. [Id.].

Once the Plaintiff was on the ground, he refused to cooperate with handcuffing. [Doc. 35-3: Cook Stmt. at 9; Doc. 35-3: Clark Stmt. at 11]. Officer Cook holstered his weapon and grabbed the Plaintiff's right arm with both hands. [Doc. 35-3: Cook Stmt. at 9]. The Plaintiff was not allowing his arms to be placed behind his back, he was defensively resisting officers' commands, and he "continuously pulled his hands away in order to resist." [Id.]. Officers Clark and Cook advised the Plaintiff to stop resisting seven times. [Doc. 35-3: Clark Stmt. at 11]. Officer Cook grabbed the Plaintiff's right wrist and "generated pain compliance using a wrist lock," at which time the Plaintiff stopped resisting with his right arm and Cook was able to cuff that hand. [Doc. 35-3: Cook Stmt. at 9]. However, the Plaintiff began pulling his left arm underneath his body to his waistband area despite Officer Clark's efforts to bring that arm behind the Plaintiff's back. [Doc. 35-3: Clark Stmt. at 11]. Officer Clark advised Officer Cook that the Plaintiff was reaching

---

Supplement by Officer Charles Campbell, who is not a Defendant in this case, stating that, when he arrived at the area where the Plaintiff was being apprehended, Campbell "located Officer Clark and Sgt. Hildenbrand on top of the suspect and handcuffing him [then] saw when they rolled the suspect over and started searching his pockets, they removed several 9mm bullets from one of Fuller's front pockets." [Doc. 34: Plaintiff's Decl. Ex at 3].

[6] The diagnosis occurred the next day. [Doc. 35-3: Clark Stmt. at 12].

[7] Officer Cook states that he "assisted" the Plaintiff to the ground. [Doc. 35-3: Cook Stmt. at 9]. According to the Plaintiff, this incident happened with Sergeant Hildenbrand, not Officer Cook; that he complied by throwing his hands in the air and getting onto his knees; and that he was then "forced to the ground…." [Doc. 38-1: Plaintiff's Decl. at 1].

5

for something and commanded the Plaintiff twice "do not reach," but the Plaintiff failed to comply.[8]  [Doc. 35-3: Clark Stmt. at 11].  Officers Cook and Clark repeatedly commanded the Plaintiff to put his hands behind his back and to stop resisting.  [Id. at 11-12].  The Plaintiff refused to stop reaching for his waistband.  [Id. at 12].

According to Officer Clark, he "had reason to believe the suspect was wanted for murdering a victim with a small firearm and [his] training and experience led [him] to believe that people often carry firearms in their front waistband area.  [He] also knew that the suspect would be able to further reach his waistband area if [Clark] let go of his arm with one of [Clark's] hands.  [Clark] was also able to observe Officer Cook attempting to handcuff the suspect's right arm…. Officer Cook was having to use both of his hands on the suspect's right arm and [Clark] believed he would be unable to let go with either of his hands to use force on the suspect."  [Id.].  Clark was unable to control the Plaintiff's left hand and prevent him from reaching toward his waistline because the Plaintiff was using defensive resistance and pulling away constantly, and because Clark's left hand was injured, painful, and weakened from the fall he had taken moments before. [Id.].  "In order to deescalate the possibility of the encounter turning into a deadly force encounter, in the case the suspect was indeed able to gain access to the firearm he used less than 48 hours previously, [Clark] decided to strike the subject repeatedly in his face with [Clark's] head (4 times) in an attempt to gain compliance."  [Doc. 35-3: Clark Stmt. at 12; see Doc. 35-3: Cook Stmt. at 9].

According to the Plaintiff, he "did not form [any] type of threat towards [anyone]," he "had no intentions of hurting [anyone]…," and Officer Clark headbutted him "with the intent to hurting [him] and causing serious injuries…."  [Doc. 38-1: Plaintiff's Decl. at 1].

After the four headbutts, Officer Clark gained control of the Plaintiff's left arm and

---

[8] The Plaintiff denies that Officer Clark commanded him "do not reach."  [Doc. 38-1: Plaintiff's Decl. at 2].

6

removed it from Plaintiff's waistband area. [Doc. 35-3: Clark Stmt. at 12]. The Plaintiff continued to resist by attempting to pull away and grab Clark's pants leg.[9] [Id.]. Officers Clark and Cook again commanded the Plaintiff to stop resisting. [Id.]. No further force was used and the Plaintiff was handcuffed without further incident. [Doc. 35-3: Clark Stmt. at 12; Doc. 35-3: Cook Stmt. at 9].

Sergeant Hildenbrand and other officers arrived on the scene after Officers Clark and Cook had successfully restrained the Plaintiff handcuffs.[10] [Doc. 35-5: Hildenbrand Aff. at ¶ 8]. Sergeant Hildenbrand was not present for, did not observe, and was not in a position to intervene in, any use of force.[11] [Id.]. Officers took control of the Plaintiff and searched him. [Id.]. Two knives were found in the Plaintiff's front right pocket, ammunition was found in the Plaintiff's backpack, and a firearm was found in bushes not far from where he was apprehended. [Doc. 35-3: Cook Stmt. at 9; Doc. 35-5: Hildenbrand Aff. at ¶ 10].

Officers Clark and Cook both informed Sergeant Hildenbrand that they had to use force to gain custody of the Plaintiff, and that Clark had injured his wrist when he fell during the chase. [Doc. 35-5: Hildenbrand Aff. at ¶ 8; Doc. 35-3: Clark Stmt. at 12; ].

Sergeant Hildenbrand asked the Plaintiff whether he was all right, and whether he needed medical attention. [Doc. 35-5: Hildenbrand Aff. at ¶ 9]. The Plaintiff said that the officer had headbutted him but that he was ok and did not need medical attention. [Id.; Doc. 35-3: Hildenbrand Stmt. at 3]. Sergeant Hildenbrand photographed the Plaintiff for his Use of Force Investigation. [Id.; Doc. 35-4: Photos at 1-2].

---

[9] The Plaintiff denies that he grabbed Officer Clark's pants leg and states that it was impossible for him to do so with "extra tight" handcuffs. [Doc. 38-1: Plaintiff's Decl. at 2].

[10] According to the Plaintiff, it was Sergeant Hildenbrand, and not Officer Cook, who was involved in apprehending him. [Doc. 38-1: Plaintiff's Decl. at 1-2].

[11] See Note 10, *supra.*

7

The Plaintiff later complained that his head hurt, and he was taken to the hospital where he had a "Headache-Assault, CMPD; Medical screening exam" at 7:19 PM. [Doc. 35-6: Atrium Health Report at 1-2; Doc. 35-3: Hildenbrand Stmt. at 4]. According to the medical screening report, Plaintiff was diagnosed with a "[f]orehead contusion" for which he received no medication or treatment; he was advised to follow up "only if needed." [Doc. 35-6: Atrium Health Report at 1-2]. According to the Plaintiff, he suffered "major injuries" from which he "may never recover" [Doc. 38: MSJ Response at 1], including "cold sweats, migraines, anxiety attacks, and flashbacks." [Doc. 38-1: Plaintiff's Decl. at 1].

The Defendants have submitted video files containing the footage from the BWC worn by Officer Clark [Doc. 35-2: BWC Ex 4], Officer Cook [Doc. 35-2: BWC Ex 5], and Sergeant Hildenbrand [Doc. 35-2: BWC Ex 6-1, 6-2] that show the following events:[12]

| Time | Event |
|---|---|
| 21:46:01 | Officer Clark stops his patrol vehicle; Officer Cook exits the vehicle with his gun drawn, shouts "get on the ground," and runs down a grassy embankment and into a business park's parking lot [Doc. 35-2: BWC Ex 4] |
| 21:46:04 | Officer Clark exits the vehicle with his gun drawn, shouts "get on the ground," and runs into the parking lot [Doc. 35-2: BWC Ex 5] |
| 21:46:08 | Officer Cook runs through the parking lot shouting "get on the ground," "let me see your hands," "get on the ground" [Doc. 35-2: BWC Ex 4] |
| 21:46:11 | Plaintiff, wearing a backpack, comes into view walking near a business [Id.] |
| 21:46:13 | Officer Clark falls in the parking lot and his BWC is knocked to the ground [Doc. 35-2: BWC Ex 5] |
| 21:46:12 | Plaintiff turns towards Officer Cook with his hands raised and says "I ain't |

---

[12] This is a summary of the relevant events depicted in the videos; it is not exhaustive. The BWC footage for Officers Cook, Clark, and Hildenbrand partially overlap and have been compiled in this section.

| | |
|---|---|
| | do nothing;" Cook continues to order "get on the ground" [Doc. 35-2: BWC Ex 4] |
| 21:46:15 | Plaintiff leans down and Cook places him on the ground with one hand, while pointing his firearm [Id.] |
| 21:46:17 | Officer Clark arrives and places his left hand on the Plaintiff's left wrist; Officer Cook holsters his gun and grabs Plaintiff's right wrist; Plaintiff says "what did I do" repeatedly [Id.]. |
| 21:46:23 | Officer Cook orders "put your hands behind your back" [Id.] |
| 21:46:26 | Officers order "stop resisting," "do not resist" [Id.] |
| 21:46:36 | While both of Officer Clark's hands are on Plaintiff's left wrist, Plaintiff brings his left hand in front of his body; Officer Cook uses both hands to bring Plaintiff's right hand behind his back [Id.] |
| 21:46:39 | Officers order "do not reach" and "put your arms behind your back" repeatedly while Plaintiff's left hand remains in front of his body [Id.] |
| 21:46:50 | Officers order "stop resisting," "put your hands behind your back" [Id.] |
| 21:46:52 | Officer Clark headbutts Plaintiff [Id.] |
| 21:46:53 | Second headbutt [Id.] |
| 21:46:54 | Third headbutt [Id.] |
| 21:46:55 | Officer Clark orders "stop resisting" [Id.]. |
| 21:46:56 | Fourth headbutt, Officer Clark orders "stop resisting" [Id.] |
| 21:47:04 | Officer Clark orders "stop grabbing us" and continues to pull on Plaintiff's left wrist; Plaintiff's left hand remains in front of his body [Id.] |
| 21:47:07 | Officers order "stop resisting" [Id.] |

9

| | |
|---|---|
| 21:47:08 | Officer Cook cuffs Plaintiff's right hand [Id.] |
| 21:47:15 | Officer Clark orders "stop … reaching" [Id.] |
| 21:47:17 | Officer Cook uses his left hand to assist Clark in bringing Plaintiff's left hand behind his body [Id.] |
| 21:47:27 | Officers Clark and Cook position Plaintiff's left hand and complete the handcuffing [Id.] |
| 21:47:41 | Officers radio their position [Id.] |
| 21:47:52 | Additional officers begin to appear on the scene [Id.] |
| 21:47:54 | Officer Clark's knee is positioned on Plaintiff's back [Id.] |
| 21:48:16 | Plaintiff says he "can't breathe;" Officer Cook asks why not [Id.] |
| 21:48:17 | Sergeant Hildenbrand parks in front of the business and exits his vehicle [Id.; Doc. 35-2: BWC Ex 6-1] |
| 21:48:21 | Officers Clark and Cook and the Plaintiff, who is handcuffed on the ground, come into view of Sergeant Hildenbrand's BWC [Doc. 35-2: BWC Ex 6-1] |
| 21:48:26 | Sergeant Hildenbrand kneels on the ground next to Plaintiff, places a hand on his wrist, and begins searching his waistband [Id.; Doc. 35-2: BWC Ex 4] |
| 21:48:41 | Officer Clark stands up and another officer replaces him; officers continue to search Plaintiff [Id.]. |
| 21:48:56 | Officer Clark retrieves his fallen BWC from the parking lot and re-attaches it to his chest [Doc. 35-2: BWC Ex 5] |
| 21:49:02 | Plaintiff is rolled onto his back [Doc. 35-2: BWC Ex 6-1] |
| 21:49:07 | Officer Clark grips his own left hand and wrist [Doc. 35-2: BWC Ex 5] |

| | |
|---|---|
| 21:49:48 | Officers begin to secure the area and search for a gun that the Plaintiff might have thrown [Id.] |
| 21:50:19 | Officer Clark tells Sergeant Hildenbrand that they had to use force on Plaintiff [Id.]. |
| 21:50:45 | Sergeant Hildenbrand stands [Doc. 35-2: BWC Ex 6-1] |
| 21:53:25 | Plaintiff is escorted to a police vehicle [Id.] |
| 22:00:15 | Sergeant Hildenbrand photographs Plaintiff's head while Plaintiff is seated in the back of a patrol car [Doc. 35-2: BWC Ex 6-2] |

## IV. DISCUSSION

### A. Excessive Force

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest. Graham v. Conner, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013). An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985). Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," including "the severity of the crime at issue, whether the suspect poses an immediate to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 399; Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). The severity of the injury resulting from the force used is one of the considerations in determining whether that force was excessive under the Fourth Amendment. See Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (quoting Jones v. Buchanan, 325 F.3d 520, 530 (4th Cir. 2003)). The ultimate question is whether the force was reasonable in the totality of the circumstances. See Garner, 417 U.S. at

11

Case 3:21-cv-00254-GCM   Document 40   Filed 08/29/22   Page 11 of 15

8-9.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204.

First, the Plaintiff alleges that Defendant Clark headbutted him repeatedly when he was not resisting, and that Defendant Hildenbrand failed to intervene. [Doc. 1: Complaint at 4]. The forecast of the evidence demonstrates that all of the Graham factors are present. The crime at issue was very serious - a homicide; officers believed that Petitioner was dangerous and was likely still armed with the firearm used in the homicide; and the Plaintiff fled from officers and actively resisted handcuffing. The Plaintiff's contention that he was not resisting is "so utterly discredited by the record that no reasonable jury could have believed him." Scott, 550 U.S. at 380 (no genuine dispute of material fact existed and officer was entitled to summary judgment where the use of force at issue was captured on video); Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("where … the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape"). Further, the BWC footage demonstrates that the officers repeatedly ordered the Plaintiff to put his hands behind his back, to stop resisting, and to stop reaching, which he ignored; that the two officers were unable to secure the Plaintiff's hands until after Clark headbutted the Plaintiff four times; and that the strikes ceased as soon as the Plaintiff's hands were secured. [Doc. 35-2: BWC

12

Ex 4]. The forecast of evidence also reveals that Clark's actions caused only a contusion on the Plaintiff's forehead that required no medication or treatment. [Doc. 35-6: Atrium Health Report at 1-2; Doc. 35-4: Photos at 1-2]. Defendant Clark's limited use of force under these circumstances was objectively reasonable and he is entitled to summary judgment on this claim. See, e.g., Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013) (first three uses of taser on a domestic violence subject who was actively resisting arrest were objectively reasonable). Moreover, the BWC footage establishes that Defendant Hildenbrand was not present for, and could not have intervened in, Defendant Clark's headbutts such that no genuine of dispute of material fact on this point exists. See Scott, 550 U.S. at 380; Iko, 535 F.3d at 230. He, too, is entitled to summary judgment on this claim.

Second, the Plaintiff alleges that the Defendants used excessive force by placing their knees on him. [Doc. 1: Complaint at 5, 8]. The BWC footage shows conclusively that Hildenbrand did not place a knee on the Plaintiff at any time. [Doc. 35-2: BWC Ex 4, 6-1]; Scott, 550 U.S. at 380; Iko, 535 F.3d at 230. The BWC footage does depict Clark's knee on the Plaintiff's back for less than a minute between the time the Plaintiff was handcuffed, and the time that other officers arrived and began to search the Plaintiff. [Id.]. The Plaintiff has not forecast evidence that this relatively brief restraint was unreasonable under the circumstances, or that it resulted in any injury whatsoever. The Court finds that it was not objectively unreasonable for Defendant Clark to place a knee on the Plaintiff's back until his waistband and clothing could be searched for weapons in light of: the seriousness of the offense; Clark had an injured hand; Plaintiff's flight, resistance to handcuffing, and attempts to reach his waistband; and the likelihood that the Plaintiff was armed. See, e.g., Peters v. Brown, 793 F. App'x 118 (3d Cir. 2019) (force used on subject who resisted and was combative, including kneeling on the subject's back at the base of his neck, that brought

13

him under control and did not harm him, was not excessive); Mongeau v. Jacksonville Sheriff's Off., 197 F. App'x 847, 851 (11th Cir. 2006) (placing a knee on subject's back to subdue him was objectively reasonable given his prior resistance and flight risk; videotape showed that, once the subject was handcuffed, the officers stopped using force except that which was necessary to hold him down and ensure he did not flee). Accordingly, the Defendants will be granted summary judgment on this claim as well.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. See, e.g., Rivas-Villegas v. Coresluna, 142 S.Ct. 4 (2021) (officer responding to a 911 call reporting a serious alleged incident of domestic violence possibly involving a chainsaw, did not violate clearly established law by placing his knee on the side of the subject's back near a knife that officers were in the process of retrieving, for no more than eight seconds).

14

Therefore, the Court grants summary judgment for the Defendants on the basis of qualified immunity.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 35] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of Court is instructed to correct the Defendants' names in the Court's record by substituting J. Ryan Clark for "R. Clark," and Peter N. Hildenbrand for "FNU Hildebrand."

3. The Clerk is respectfully directed to terminate this action.

Signed: August 29, 2022

Graham C. Mullen
United States District Judge